MICHAEL W. VIVOLI  (Bar No. 184366)
(email: mvivoli@vivolilaw.com)
JASON P. SACCUZZO (Bar No. 221837)
(email: jsaccuzzo@vivolilaw.com)
VIVOLI SACCUZZO, LLP
2550 Fifth Avenue, Suite 709
San Diego, California 92103
(619) 744-9992 (Tel)
(619) 744-9994 (Fax)

Attorneys for Creditors,
EMIL YOUSSEFZADEH and PAULINE YOUSSEFZADEH

UNITED STATES BANKRUPTCY COURT

IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re<br><br>TONY "AZIZ" ASHAI,<br><br>    Debtor.<br>_____<br><br>EMIL YOUSSEFZADEH, an individual, and PAULINE YOUSSEFZADEH, an individual,<br><br>    Plaintiffs,<br><br>v.<br><br>TONY "AZIZ" ASHAI,<br><br>    Defendant.<br>_____ | CASE NO.:  2:13-bk-11265-ER<br>Adversary Case No.: 2:13-01447-ER<br><br>Chapter 7<br><br>**FIRST AMENDED COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT AND DISCHARGE OF BANKRUPTCY**<br><br>[Bankruptcy Code §§ 523 and 727]<br><br>Trial: February 24, 2014<br>Time: 9:00 a.m.<br>Dept.: Crtrm 1568<br>Judge: Ernest M. Robles |

Plaintiffs EMIL YOUSSEFZADEH and PAULINE YOUSSEFZADEH ("Plaintiffs") allege and state for their First Amended Complaint Objecting to the

Dischargeability of Debt pursuant to 11 U.S.C. § 523 and Discharge of Bankruptcy pursuant to 11 U.S.C. § 727 as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and pursuant to 11 U.S.C. § 523 and 727. This adversary proceeding is a core proceeding as that term is defined in 28 U.S.C. §157 including, without limitation, 28 U.S.C. § 157(b)(2)(I) and this Court may enter a final judgment herein subject to review under 28 U.S.C. § 158. This matter is properly brought as an adversary proceeding pursuant to the Federal Rules of Bankruptcy Procedure, Rule 7001. In this adversary proceeding, Plaintiffs consent to the entry of final orders and judgments by the Bankruptcy Judge.

2.  On January 1, 2013, TONY ASHAI, also known as TONY AZIZ, filed a Voluntary Petition for relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Case No. 2:13-bk-11265-ER (hereinafter the "Bankruptcy Action").

3.  Venue in this Court is proper pursuant to 28 U.S.C. § 1409 as this adversary proceeding arises under and in connection with a case under the Bankruptcy Code which is pending in this District. The above Court is the proper court for trial in this action.

4.  Plaintiffs are informed and believe and on that basis alleges that April 12, 2013 was fixed by the Court as the last date for filing of complaints as provided in 11 U.S.C. § 523(c), to determine the dischargeability of debts claimed to be nondischargeable, and to the right to a bankruptcy discharge under 11 U.S.C. § 727. Plaintiffs filed their original adversary complaint in this matter prior to the foregoing deadline.

## PARTIES

5.  Plaintiff EMIL YOUSSEFZADEH is an individual domiciled within the County of Los Angeles in the State of California.

6. Plaintiff PAULINE YOUSSEFZADEH is an individual domiciled within the County of Los Angeles in the State of California.

7. Plaintiffs are informed and believe and on that basis allege that at all times relevant to this action, Defendant TONY ASHAI, also known as TONY AZIZ (hereinafter "Ashai"), was and is an individual residing in the County of Los Angeles of the State of California and doing business in the State of California and overseas as a licensed architect. Plaintiffs are further informed and believe and on that basis allege that at all times relevant to this action Defendant Ashai was the sole shareholder and President of Ashai Design Corporation and the Ashai Group, and that Defendant Ashai does business or is attempting to do business under the foregoing corporations or individually.

## GENERAL ALLEGATIONS

8. Plaintiffs are informed and believe and on that basis allege that Ashai is a licensed architect and has done business as an architect for over 25 years. Ashai states on various active websites his numerous accomplishments as an architect, and that his designs are known around the world. Defendant Ashai also credits himself as a real estate syndicator and claims to have developed many successful projects.

9. Based upon Ashai's stated experience as an architect and real estate syndicator, Ashai induced Plaintiffs to invest the sum of approximately $2,513,692 with him for purposes of purchasing, joint venturing, developing and/or selling for mutual profit various real properties or real property projects. Among the real properties or real property projects in which Plaintiffs invested with Defendants were the following, will be collectively referred to herein as the "Investment Properties":

    1.) Lots located at 319 and 327 North Harbor Boulevard, San Pedro, California 90731 (the "319/327 N. Harbor Blvd. Property");

////

2.)   Real property commonly described as 374 West 8th Street (San Pedro Area), Los Angeles, CA 90731 (the "8th Street Property");

3.)   Real property commonly described as 420-424 West 9th Street (San Pedro Area), Los Angeles, CA 90731 (the "9th Street Property"); and,

4.)   Real property commonly known as 407 North Harbor Boulevard, San Pedro, California 90731 (the "407 N. Harbor Blvd. Property").

10.   Ashai represented that Plaintiffs' investment would be "low risk" because of the nature of the projects and because Plaintiffs' money would be fully secured against the real property of the projects. Contrary to Ashai's representations the projects had undisclosed financial difficulties. Although Ashai represented that the undisclosed financial difficulties were only temporary, Plaintiffs demanded the return of their investment money. After Ashai failed and refused to return Plaintiffs' money, Plaintiffs advised they intended to sue Ashai for the return of their money and for fraud. In order to avoid imminent litigation, Ashai agreed to pay Plaintiffs the sum of $2,000,000, and to assume certain obligations in exchange for Plaintiffs' agreement to relinquish their right to full return of their investment money. Ashai further represented that the projects were viable and he offered to secure $1,800,000 of the liquidated payment owed to Plaintiffs against the foregoing projects and by his personal residence located at 1584 Via Zurita, Palos Verdes Peninsula, CA 90074. In addition to stating that Plaintiffs would be assured payment as secured by the foregoing projects and Ashai's personal residence, Ashai advised Plaintiffs that he was working on a lucrative project in Dubai called the "Ashai Tower 5" project, and upon the completion of the "Ashai Tower 5" project Plaintiffs would be paid in full.

11.   However, contrary to Ashai's representations the foregoing projects were not viable. Unknown to Plaintiffs, Ashai had taken out numerous loans on the Investment Properties, such that none of properties had any equity and the deeds of trust Ashai promised to provide to Plaintiffs were worthless. Moreover, at

the time Ashai represented that Plaintiffs would be provided full security for $1,800,000 of the $2,000,000 Ashai agreed to pay Plaintiffs, Ashai was borrowing heavily from friends and family members to make it appear that progress was being made on the projects. Directly contrary to Ashai's representations to Plaintiffs, Ashai knew that absent a miraculous change in the economy and the infusion of a significant amount of new investor cash, the Investment Properties were doomed to fail. Plaintiffs had no way of knowing the Investment Properties were suffering from such financial problems, because Ashai controlled the financial documents for the Investment Properties and because Ashai was using the money he borrowed from friends and family members to make it appear as if progress was being made on the projects.

12. Ashai's representations concerning the "Ashai Tower 5" project were also false. In truth, the project was on the verge of collapse. Ashai attempted to conceal this fact from Plaintiffs by putting on an elaborate show for Plaintiff EMIL YOUSSEFZADEH when Plaintiff EMIL YOUSSEFZADEH visited Ashai in Dubai. Ashai showed Plaintiff EMIL YOUSSEFZADEH the purported plans and advertisements for "Ashai Tower 5," and claimed construction would soon start on the project. Plaintiff EMIL YOUSSEFZADEH had no reasons to doubt the elaborate show Ashai put on concerning the viability of the Ashai Tower 5" project given the parties' prior business dealings and Ashai's reputation world renowned architect.

13. Plaintiffs further relied upon Ashai's representations concerning the viability of the foregoing projects given Ashai continued to project success as established by the fact he continued to drive luxury cars, wear expensive Rolex watches and handmade suits. Ashai was also very adamant and convincing that Plaintiffs would be repaid.

14. Plaintiffs are informed and believe, and on that basis allege, that Ashai made the foregoing representations simply in an effort to avoid an imminent

1 lawsuit for fraud so as to buy time to conceal his assets. Ashai admitted that he made multiple visits overseas around the time of the foregoing events. Plaintiffs are informed and believe, and on that basis allege Ashai used these overseas visits to conceal assets and income.

15. After Ashai failed to honor his agreement to pay Plaintiffs $2,000,000, and after it became apparent Ashai intended to allow all of his projects to go into default, Plaintiffs filed a civil action against Ashai in the Superior Court of the State of California for Los Angeles County, entitled <u>Emil Youssefzadeh et al. v. Tony Ashai</u>, Case No. YC065553 (hereinafter the "State Court Case"). Ashai failed to defend the State Court Case, and just prior to his filing of the Bankruptcy Action, Plaintiffs had an application for entry of a default judgment pending before the State Court Case.

16. Prior to filing the original adversary complaint, Plaintiffs conducted a 2004 Examination of Ashai. The purpose of the 2004 Examination was to determine whether Ashai's claims of poverty were true. However, Ashai failed and refused to produce any documents that would support his contention that his claims of poverty were true. This is despite the fact that Ashai's CPA's office is next door to his attorney's office, and Ashai could have easily obtained documents establishing his claims of poverty if they were true. However, Ashai's failure to provide the requested documents demonstrates Ashai is concealing assets that could be used to satisfy his creditors.

## FIRST CLAIM FOR RELIEF

**(Nondischargeability Of Debt Pursuant To 11 U.S.C. Section 523)**

17. Plaintiffs repeat and reallege each, every and all allegations set forth in paragraphs 1 through 16, inclusive, of this Complaint and by this reference incorporates the same herein as though more fully set forth at length.

18. Plaintiffs allege the money, property and/or extension of credit obtained by Ashai from Plaintiffs is a nondischargeable debt pursuant to 11 U.S.C.

§ 523(a)(2)(A) as the money, property and/or extension of credit were obtained by Ashai were by false pretenses, a false representation and/or actual fraud other than a statement respecting Ashai's true financial condition.

19. At all relevant times Ashai represented to Plaintiffs that the above referenced projects were viable and that the proceeds from the projects would be more than enough to satisfy Plaintiffs' claims. However, contrary to these representations Ashai knew that the projects were not viable and Ashai was borrowing heavily to make it appear as if the projects were viable only to defraud Plaintiffs and Ashai's other creditors. Ashai made the foregoing representations in order to induce Plaintiffs to compromise their claims and to dissuade Plaintiffs from filing suit in state court for fraud, which would have robbed Ashai of valuable time to hide his assets. Plaintiffs justifiably relied upon Ashai's representations, and Plaintiffs would have not agreed to compromise their claims against Ashai had they known the true financial condition of the projects and the fact Ashai had no intention of honoring his obligations.

20. Plaintiffs sustained damages as a proximate result of the false pretenses, false representations and/or actual fraud of Ashai. Ashai failed and refused to pay any part of the $2,000,000. Ashai has acknowledged that no part of the $2,000,000 owed to Plaintiffs has been paid, and this money is owed to Plaintiffs. Ashai claims he lacks the funds to pay the $2,000,000 owed to Plaintiffs, although Ashai continues to travel overseas, drive fancy cars and reside in a multi-million dollar home. Also, contrary to Ashai's representations in his bankruptcy petition, Ashai failed to disclose various sources of income and it is believed Ashai has transferred substantial assets overseas to put them out of the reach of his creditors.

/ / / /

/ / / /

/ / / /

## SECOND CLAIM FOR RELIEF

### (Denial of Discharge Under Bankruptcy Code § 727)

21.     Plaintiffs repeat and reallege each, every and all allegations set forth in paragraphs 1 through 20, inclusive, of this Complaint and by this reference incorporates the same herein as though more fully set forth at length.

22.     Plaintiffs are informed and believe and thereon alleges that Ashai, as debtor in the case, violated Bankruptcy Code § 727(a)(4)(A), knowingly and fraudulently, in or in connection with the case, by making a false oath, including, without limitation, his scheduling of his assets. Specifically, Ashai failed to specifically list money he received from various family members in his bankruptcy schedules. Ashai testified during his 2004 Examination that he has received approximately $80,000 from his sister. Ashai also testified that he has received approximately $100,000 from his brother. Ashai testified that he received this money typically in cash payments, and that rather than deposit this money into his own account he directed the money be deposited into his wife's bank account. In addition to failing to disclose the money he received from family members, Ashai failed to disclose community property that could be used to satisfy his debts. Ashai's wife is employed by Harbor UCLA as research assistant making approximately $36,000 a year. Ashai testified that this money is placed into an account in his wife's name alone and that his wife's salary is used to pay household expenses. Lastly, admitted during his deposition to retaining copies of various plans for projects he designed in the past. While Ashai claims these plans are "worthless," plaintiffs are informed and believe, and based thereon allege that these plans are copyrighted and have significant value and that Ashai intends to use these plans to launch a new architectural business, which Ashai admitted he was forming with prior employees and/or business associates.

23.     Other assets Ashai is believed to have concealed include lavish household furnishings for his Palos Verdes residence. Ashai admitted during his

2004 Examination that his residence is fully furnished. Plaintiffs estimate these furnishings and multiple electronics Ashai admitted he continued to own exceed $20,000, rather than the $750 as alleged in Ashai's bankruptcy petition. Ashai also admitted to previously owning numerous Rolex watches, but he was unable to provide receipts for the alleged sale of these watches.

24.  Lastly, Plaintiff is informed and believes, and on that basis alleges that Ashai continued to generate income by performing architectural work. At the time of Ashai's bankruptcy petition, Ashai was identified as the architect of record for a project in Palos Verdes. Additionally, Ashai admitted he has left the country approximately 4 to 5 times in the last year, and that at least two of the trips were business related. With respect to one of the trips, Ashai admitted it pertained to a project in India. In addition to the project in India, Plaintiffs believe, as reflected by internet news releases, that Ashai was also engaged by developers in Dubai to design interiors for multi-million dollar luxury homes.

25.  Plaintiffs are also informed and believe and thereon alleges that Ashai, as debtor in the case, violated Bankruptcy Code § 727(a)(4)(C), knowingly and fraudulently, in or in connection with the case, by entering into the settlement agreement with Plaintiffs without any intent of performing his obligations under the settlement agreement.

26.  Plaintiffs further object to Ashai's request for discharge in bankruptcy on the grounds that Ashai has failed to explain, satisfactorily, the loss of his assets in violation of Bankruptcy Code § 727(a)(4)(D). This would include the assets of his former architectural business. Again, at the time of his 2004 Examination Ashai testified that he was forming a "new" architectural business. However, Plaintiffs believe Ashai is forming this "new" architectural business using the assets of his former architectural business that were concealed from his creditors.

27.  Additionally, in violation of Bankruptcy Code § 727(a)(3) Ashai has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any

recorded information, including books, documents, records, and papers, from which the Ashai's true financial condition or business transactions might be ascertained. In this regard, Ashai failed to produce documents requested at his 2004 Examination so as to support his claim of poverty. Notably, Ashai's CPA's office was located in the same office building as Ashai's attorney. Ashai admitted that his CPA would have copies of all his financial records, yet Ashai failed and refused to obtain his financial records before his 2004 Examination. As of the date of this amended complaint, Ashai has yet to provide these records which will be the subject of formal discovery requests in this adversary action. This discovery will include a subpoena to Ashai's CPA.

28. By reason of the foregoing violations of Bankruptcy Code § 727(a), Ashai should be denied a discharge in the Case.

WHEREFORE, Plaintiff prays for judgment as follows:

(1) For an order denying Defendant the discharge of his debts to Plaintiffs;

(2) For an order denying the general discharge of Defendant;

(3) For damages in the exceeding the amount of $2,000,000;

(4) For attorney's fees incurred herein;

(5) For costs of suit incurred herein; and

(6) For such other and further relief as the court deems proper.

Date: July 23, 2013                               VIVOLI SACCUZZO, LLP


By: /s/ *Michael W. Vivoli*
　　MICHAEL W. VIVOLI
　　JASON P. SACCUZZO
　　Attorneys for Creditors
　　EMIL YOUSSEFZADEH and
　　PAULINE YOUSSEFZADEH